# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AARON JOLO,** | : | **CIVIL NO.4:15-CV-1845** |
| | : | |
| **Petitioner,** | : | **(Judge Brann)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ATTORNEY GENERAL,** | : | |
| | : | |
| **Respondent.** | : | |

## MEMORANDUM ORDER

THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

This federal habeas corpus petition comes before us in an unusual posture, where the Respondent seeks to appeal a mere scheduling order issued by this court, (Doc. 13), and stay that order, (Doc. 15), based upon the misapprehension that this scheduling order somehow constitutes a ruling on the merits of this petition. While we will GRANT this request for a stay, in part, as described below, we take this opportunity to clarify the parties' profound confusion concerning this rather routine scheduling order.

By way of background, the petitioner, a Liberian national who is facing removal from the United States, has filed a petition for writ of habeas corpus. That petition indicates that Jolo came into immigration custody in November 2014, and was ordered

1

removed in January, 2015, but remains in immigration detention pending removal. With the passage of nearly one year in immigration detention, and some ten months since Jolo became subject to an administratively final order of removal, the petitioner has come before this court filing this petition for writ of habeas corpus, and seeking individualized bail consideration.

We then entered a simple scheduling order in this case on November 5, 2015. (Doc. 12.) That order required two things of the Respondent. First, on or before November 30, 2015, the Respondent was to file a status report with the court indicating the status of Jolo's removal and whether the Respondents have elected to have an Immigration Judge make an individualized inquiry into whether detention is still necessary to fulfill the purposes of ensuring that the petitioner attends removal proceedings and that his release will not pose a danger to the community. (Id.) The parties were also directed to report regarding whether they believe that a further hearing is necessary.

Second, this scheduling order conditionally set a time and date for further proceedings in this matter, where the petitioner had been held in immigration custody for a year, stating that if Jolo remained in detention, was not subject to imminent removal, had not received individualized bail consideration by November 30, 2015, and our review of the parties' status reports revealed that further action was

appropriate, this court would conduct an oral argument and bail or detention hearing on December 2, 2015 at 11:00 a.m. in Courtroom 5, United States Courthouse, Harrisburg, Pennsylvania, where the parties could present argument and evidence relating to this issues raised by this petition. (Id.)

The Respondent regrettably never sought further clarification of this scheduling order. Instead, on November 19, 2015, the Respondent filed an appeal of this order, along with a motion for stay. (Docs. 13-16.) These pleadings revealed an unfortunate, and wholly avoidable confusion on the part of the Respondent concerning this scheduling order, a confusion which we are pleased to clarify and eliminate for the parties.

First, in these pleadings the Respondents incorrectly construed this scheduling order, which called for a status report from Respondent and then set a tentative hearing/oral argument date, as a decision which rendered final habeas corpus relief to the petitioner. In fact, our November 5, 2015 order does no such thing. Rather, it simply asks for a status report on the progress of Jolo's removal, and set a tentative date for further argument and presentation of evidence to the court. This second court appearance, however, was only tentatively scheduled, and the necessity of any further proceeding will depend upon the status report which we receive from the parties, something that was made plain by the court in its November 5 order which stated that a court proceeding would be conducted only if "our review of the parties' status reports

reveals that further action is appropriate." (Id.)

Nothing in the scheduling of these events is, was meant to be, or should be construed as evincing a view on the ultimate merits of this petition. Quite the contrary, this order simply scheduled a systematic way of addressing those merits, while providing all parties the opportunity to argue those merits and present any evidence relevant to this merits determination. For example, in their appeal and stay filings, Respondent alleges that Jolo has an extensive criminal record, a factor which would weigh significantly in any detention decision. Our scheduling order, properly construed, was intended to allow the Respondent to present precisely this type of information to us, while affording Jolo a chance to respond to this information. In our view, there is simply nothing objectionable about adopting such an approach to an issue that is so important to these litigants.

With its view of this order perhaps clouded by this initial misapprehension that this scheduling order in some way covertly ruled upon the merits, the Respondent then expressed confusion on a second, fundamental aspect of this order, which we are also pleased to clarify. In these pleadings the Respondent suggests that we have applied an erroneous standard of review in granting Jolo habeas relief and contends that this petition should be examined in light of the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001), which defined due process standards for aliens like Jolo who are subject to final orders of deportation.

This argument reflects basic confusion on two scores. First, it erroneously conflates a scheduling order with a final merits decision. Our November 5 order never ruled on the merits of this petition, and therefore never applied any legal standard, sound or erroneous, to any merits determination.

Second, this argument mistakenly suggests that we have not considered this case in light of Zadvydas. The confusion on this latter point is somewhat puzzling, since our November 5 order actually discussed Zadvydas at length, (Doc. 12, pp. 5-7), and explained that in this case, it appears that Jolo has been the subject of a final removal for the past 11 months since January of 2015. We also noted that, as an alien subject to an administratively final order of removal, Jolo's detention is governed by a rigorous set of statutory and constitutional rules, rules designed to avoid undue delay. First, by statute, once an alien is subject to a final removal order, he may be detained under 8 U.S.C. § 1231(a), which directs the Attorney General to remove such aliens within 90 days of the entry of a removal order. 8 U.S.C. § 1231(a)(1)(A). The statute then commands that "[d]uring the removal period the Attorney General shall detain the alien", 8 U.S.C. § 1231(a)(2), and with respect to criminal recidivist aliens like Jolo specifically provides that: "Under no circumstance during the removal period shall the Attorney General release an alien who has been found ...deportable under section 1227(a)(2) ... of this title." 8 U.S.C. § 1231(a)(2). For purposes of our analysis

of any post-final order period of detention, this statutory ninety-day "removal period" during which detention is mandatory begins on the date the order of removal becomes administratively final; that is, the date of the BIA decision affirming the removal order. See 8 U.S.C. § 1231(a)(1)(B)(I).

Furthermore, upon the entry of this final order, an alien will also have further constitutional protections against undue delay and detention. For aliens awaiting removal, the contours of those rights are now defined by the United States Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001). In Zadvydas, the United States Supreme Court extended due process protections to aliens awaiting removal from the United States, while generally sustaining the validity of the initial mandatory detention period for such aliens during the ninety-day removal period prescribed by 8 U.S.C. § 1231(a)(1)(A). Beyond this initial 90-day period the Court concluded that: "we think it practically necessary to recognize some presumptively reasonable period of detention." Id. at 701.

The Court then observed that:

> While an argument can be made for confining any presumption to 90 days, we doubt that when Congress shortened the removal period to 90 days in 1996 it believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months . . . . Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

> future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701.

Taken together, 8 U.S.C. § 1231(a)(1)(A) and Zadvydas create a statutory and constitutional framework for protecting the rights of aliens who are detained pursuant to administratively final removal orders. Under this framework, such aliens shall be detained for the first 90 days of the removal period and further detention beyond this 90-day period will be presumed reasonable up to a period of 6 months. But, as we previously noted, in our November 5 order we also observed that, according to the Supreme Court: "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of

7

removal in the reasonably foreseeable future." Id.

Given the undisputed fact that Jolo's post final order of removal now well exceeds the presumptively reasonable period defined by the Supreme Court, we elected to schedule these proceedings, consistent with Zadvydas, to explore the legal and factual issues relevant to this determination. Such hearings have in the past been scheduled by trial courts when examining post-removal detention petitions which involve claims of detention beyond the presumptively reasonable period defined by Zadvydas. Barenboy v. Attorney Gen. of U.S., 160 F. App'x 258, 260 (3d Cir. 2005)(denying petition after a hearing). We trust that this order further clarifies our understanding of the scope and nature of any further proceedings, and eliminates the wholly unwarranted concern that this scheduling order constituted a ruling on the merits of this petition since clearly it did not.[1]

Having provided this further clarification to the parties, we turn to the motion for stay filed by the Respondent. As the Respondent is doubtless aware, in the normal

---

[1]We also understand that the Respondent may have been concerned that our scheduling order invited the parties to address factors that it deemed inappropriate in a post-removal setting, such as those enumerated by the court of appeals in Chavez-Alvarez v. Warden York Cty. Prison, 783 F.3d 469, 470 (3d Cir. 2015). To the extent that this concern has animated the instant appeal, and stay request, it may be more productive to address these issues in conjunction with the proceedings scheduled in this case by the court rather than engaging in somewhat speculative piecemeal appeals of scheduling orders. Towards that goal, we are scheduling further submissions by the parties.

8

course of proceedings, a motion for a stay of an order pending an appeal of that order should in the first instance be directed to the judge who issued the initial order. See Rule 8, Fed. R. App. Proc. Further, "we note that, . . . , 'motions to stay litigation ..., are non-dispositive motions under Rule 72(a). See, e.g., Gonzalez v. GE Group Adm'rs, Inc., 321 F.Supp.2d 165, 166 (D.Mass.2004); Torrance v. Aames Funding Corp., 242 F.Supp.2d 862, 865 (D.Or.2002); All Saint's Brands, Inc. v. Brewery Group Den., A/S, 57 F.Supp.2d 825, 833 (D.Minn.1999); Herko v. Metro. Life Ins. Co., 978 F.Supp. 141, 142 n. 1 (W.D.N.Y.1997).' PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir.2010). Therefore, the decision to grant, deny or lift a stay rests within the jurisdiction and sound discretion of a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(A), subject to appeal to the district court for an abuse of that discretion. Touton, S.A. v. M.V. Rizcun Trader, 30 F.Supp.2d 508, 510 (E.D.Pa.1998) ('[T]he Court finds that neither the grant of the stay of proceedings ..., nor the lift of said stay, constituted "injunctive relief" in excess of the Magistrate Judge's authority under § 636(b)(1)(A).').'" Stewart v. Wetzel, No. 1:13-CV-1707, 2013 WL 3353492, at *3 (M.D. Pa. July 2, 2013).

Accordingly, we will address this motion to stay in the first instance. In considering this stay request, and recognizing the unfortunate confusion which animated both the request for stay, and this appeal, we believe that an extension of some of these deadlines is appropriate, and therefore we will GRANT the request, in

part, as follows:

First, on or before **Monday, December 7, 2015**, the Respondents shall file a status report with the court indicating the status of Jolo's removal and whether the Respondents have elected to have an Immigration Judge make an individualized bail determination. The parties shall also report on this date regarding whether they believe that a further hearing is necessary. Aside from enlarging the deadline for the filing of this status report, this aspect of our prior scheduling order shall remain unchanged. By requesting this information of the parties, we invite all parties to address, both legally and factually, the question of whether a further hearing is necessary.

Second, if our review of the parties' status reports reveals that further action is appropriate, this court will conduct an oral argument and bail or detention hearing on **December 18, 2015 at 11:00 a.m.** in Courtroom 5, United States Courthouse, Harrisburg, Pennsylvania, where the parties can present argument and evidence relating to this issues raised by this petition. No party should construe the scheduling of a hearing as a ruling on the merits, and if a hearing is conducted all parties should file supplemental memoranda discussing the appropriate scope of a hearing or oral argument, as well as the proper standard of review for this habeas petition, on or before **December 15, 2015.**

So ordered this 24th day of November, 2015.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge
